UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

D-2: JARREAU MUNTU BULLOCK,

    Defendant.
_____/

Case No. 18-20364
District Judge Victoria A. Roberts
Magistrate Judge Anthony P. Patti

# OPINION AND ORDER DENYING
# DEFENDANT'S MOTION TO SUPPRESS (Doc. #90)

## I. INTRODUCTION

At issue is whether this Court should suppress evidence gathered incident to the arrest of Defendant Jarreau Muntu Bullock ("Bullock"); Bullock says that the government did not have probable cause to stop and search the SUV that he was a passenger in. Because Bullock had no reasonable expectation of privacy and the government had probable cause to stop and search the SUV, Bullock's Fourth Amendment rights were not violated. His motion is **DENIED**.

## II. BACKGROUND

On May 23, 2018, Bullock was arraigned on an indictment alleging three counts against him. Counts One and Two alleged conspiracy to possess with intent to distribute a controlled substance, while Count Three alleged that Bullock was a felon in possession of a firearm. On August 2, 2018, the United States Government issued a First Superseding Indictment that added Count Six, alleging conspiracy to possess with intent to distribute heroin.

1

The indictment arises out of a controlled traffic stop of Bullock and three of his co-defendants on May 13, 2018. In March of 2018, based on a cooperating informant's tip, the Westland Police Department identified Clarence Thomas Weaver ("Weaver") as a potential supplier of cocaine in Wayne County, Michigan. Westland Police conducted a controlled purchase of cocaine from Weaver and, as a result, obtained a search warrant to track his cellphone. The government says that Weaver was located in Georgia on May 10, 2018; Westland Police believed that Weaver had gone to Georgia to sell heroin.

Westland Police tracked Weaver's return to Michigan from Georgia; they were still monitoring his movements pursuant to the previously issued warrant. Westland Police enlisted the Michigan State Police ("MSP") to help conduct a controlled stop of Weaver's SUV upon his return to Michigan. In the early morning hours of May 13, 2018, Westland Police met with MSP at a gas station near Weaver's anticipated route; Westland Police informed the MSP troopers of the details of their investigation of Weaver and told the troopers that Weaver was likely carrying narcotics into Michigan. Shortly after Weaver entered Michigan, Westland Police clocked him speeding near Exit 6 on I-75. MSP Trooper Jake Yacuone ("Trooper Yacuone") then paced Weaver's SUV and clocked him speeding.

Trooper Yacuone stopped Weaver's SUV, a vehicle Weaver rented. As Trooper Yacuone approached the driver's side door of the SUV, he smelled marijuana. He also says that he saw marijuana "shake," a green, leafy substance that typically constitutes residue of a rolled marijuana cigarette, on the front and back floor boards of the SUV.

2

After reaching the SUV, Trooper Yacuone asked the occupants for identification; he discovered that the driver, Chanel Lewis, had a suspended license. Trooper Yacuone arrested Lewis for driving with a suspended license and removed the other occupants from the SUV. According to the government, MSP Trooper Bellestri arrived with his dog approximately five minutes after the stop. Upon his arrival at the scene, Bellestri also observed marijuana "shake" on the floor boards of the SUV. Having made that observation, Bellestri asked the occupants whether any of them had a medical marijuana card; they replied that they did not. Bellestri's dog, Rex, conducted a canine sniff search; Rex indicated there were drugs inside the SUV.

The troopers then searched the SUV. They discovered two guns, wrapped in a pair of True Religion jeans, in the third row seating area. The government says that heavy rainfall forced the troopers to stop the search and continue it at the Westland Police Station; Westland Police impounded the vehicle and conducted an inventory search. They discovered, among other things, a duffle bag containing Weaver's medication, a watch, and 50 grams of methamphetamine.

Bullock says there was no probable cause to stop the SUV. He also contends that the MSP troopers lied about smelling and seeing marijuana; he points to the fact that Trooper Yacuone failed to mention marijuana in his police report and says that, ultimately, no marijuana was discovered. Moreover, Bullock says that, because the troopers did not actually smell or see marijuana, there was no reasonable suspicion or probable cause to search the SUV. Finally, Bullock contends that the traffic stop was pretextual; he says the pretext renders the stop and subsequent search of the SUV invalid.

## III. ANALYSIS

The Court notes at the outset that Bullock did not have a reasonable expectation of privacy in the SUV or its contents and had no Fourth Amendment rights that the police could violate; Bullock did not own or rent the SUV, and he affirmatively denied ownership of the jeans and duffle bag that contained the relevant evidence. *See Rakas v. Illinois*, 439 U.S. 128 (1976) (affirming denial of Defendants' motion to suppress because they asserted neither a possessory nor a property interest in the automobile and areas searched). While Bullock's lack of standing is dispositive of this motion, the Court presumes Bullock's standing to object to the search for purposes of addressing the Fourth Amendment issues he raises.

### A. The Government had Probable Cause to Stop the SUV

Bullock contends the MSP did not have probable cause to stop the SUV for speeding, primarily basing his argument on his contentions that Trooper Yacuone: (1) did not pace the SUV for long enough to accurately gauge its speed; and (2) was not entitled to rely on his fellow officers' claims that the SUV was speeding. Moreover, Bullock contends that the officers used their assertion that the SUV was speeding as a pretext to search for drugs; he says that this pretext renders the stop and subsequent search of the SUV invalid. Bullock is simply wrong.

Probable cause is defined as "'reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion.'" *United States v. Smith*, 510 F.3d 641, 647-48 (6th Cir. 2007) (quoting *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990)). The Court's determination of whether probable cause existed is a

4

"'commonsense, practical question' to be judged from the 'totality-of-the-circumstances.'" *Id.* at 648 (citing *Smith v. Thornburg*, 136 F.3d 1070, 1074-75 (6th Cir. 1998)). In determining whether there was probable cause, the Court looks to the "'objective facts known to the officer at the time of the search.'" *Id.* (quoting *Smith*, 136 F.3d at 1075). The establishment of probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates*, 462 U.S. 213, 243 n.13 (1983).

Importantly, the Sixth Circuit held that "probable cause may be established from the collective knowledge of the police rather than solely from the officer who made the arrest." *Willis v. Neal*, 247 F.App'x 738, 742-43 (6th Cir. 2007) (citing *Collins v. Nagle*, 892 F.2d 489, 495 (6th Cir. 1989)).

First, while Trooper Yacuone testified on cross-examination that he only paced the SUV for one-tenth of a mile, his dash-cam video shows otherwise; in fact, Yacuone paced the SUV going 78 miles per hour for over a minute. Further, Trooper Yacuone testified on re-direct examination that his pacing of the SUV followed proper police procedures. Moreover, even if Trooper Yacuone had not properly paced the SUV, he still had probable cause to believe it was speeding; he was entitled to rely on information supplied by his fellow officers regarding the SUV's speed.

Trooper Yacuone based his stop of the SUV on his own pacing, as well as reports from his fellow officers that the SUV was speeding. These facts easily constitute reasonable grounds for belief, under the totality of the circumstances, that Weaver was committing a civil traffic violation. Trooper Yacuone had probable cause to stop the SUV.

Finally, the subjective intent of law enforcement in stopping a speeding vehicle does not make otherwise lawful conduct illegal or unconstitutional. Indeed, the United States Supreme Court held that using a pretext to seize does not obviate the legal justification, or probable cause, for the seizure itself. *See Whren v. United States*, 517 U.S. 806, 812-13 (1996); *see also United States v. Burton*, 334 F.3d 514, 516 (6th Cir. 2003). Moreover, as discussed below, the government had ample probable cause to search the SUV.

### B. The Government had Probable Cause to Search the SUV

Bullock says the MSP did not have probable cause to search the SUV; he claims that the troopers lied about smelling marijuana and did not glean enough relevant information from the Westland Police's investigation of Weaver to conduct a canine sniff search. Troopers Yacuone and Klenner both testified they smelled marijuana as they approached the SUV. Moreover, even had the Troopers not detected marijuana, the MSP had probable cause to search the SUV based on the information gathered pursuant to the Westland Police's months-long investigation into Weaver's drug trafficking activities, as well as the information gathered at the scene of the stop itself.

Generally, the Fourth Amendment requires police officers to obtain a warrant before conducting a search. *United States v. Smith*, 510 F.3d 641, 647 (6th Cir. 2007) (citing *Maryland v. Dyson*, 527 U.S. 465, 466 (1999)). However, the United States Supreme Court established an exception to the warrant requirement with respect to automobile searches. *Id.* "Under the automobile exception, police officers may conduct a warrantless search of a vehicle if they have 'probable cause to believe that the vehicle

6

contains evidence of a crime.'" *Id.* (quoting *United States v. Lumpkin*, 159 F.3d 983, 986 (6th Cir. 1998)).

First, Troopers Yacuone and Klenner, who made the initial stop of the SUV, testified that they saw and smelled marijuana at the scene. Trooper Yacuone testified that he smelled marijuana upon his initial approach of the driver's side door; he also testified that he saw marijuana "shake" on the floor boards.

Moreover, Trooper Klenner testified that he smelled the "strong odor of marijuana" as he approached the SUV. Trooper Klenner said he saw a marijuana vape pen sitting in the SUV's center console. Further, Trooper Klenner testified that Chanel Lewis, the driver of the SUV, admitted to smoking from the pen when he approached.

The Court finds the testimony of both troopers credible. As such, their testimony is sufficient to establish probable cause to conduct a full search of the SUV. *See United States v. Johnson*, 707 F.3d 655, 658 (6th Cir. 2013) ("an officer's detection of the smell of marijuana in an automobile can by itself establish probable cause for a search.") (citing *United States v. Bailey*, 407 F.App'x 27, 28–29 (6th Cir. 2011)).

MSP also had probable cause to search the SUV based on the Westland Police Department's months-long investigation of Weaver. The Westland Police Department began its investigation of Weaver in March of 2018, approximately two months before this traffic stop; the investigation began when Westland Police received a tip from a confidential informant that Weaver was trafficking cocaine. Westland Police conducted a controlled purchase of cocaine from Weaver in April; that purchase led them to obtain a search warrant to track Weaver via his cellphone. Westland Police had tracked

Weaver's trip to Georgia and back. Moreover, Westland Police knew that Weaver had previously taken long road trips to sell drugs. Importantly, Westland Police shared the findings of their investigation with the MSP troopers who made the stop.

Additionally, upon stopping the vehicle and questioning its occupants, the officers received inconsistent stories regarding the purpose of the trip; Trooper Klenner testified that one of the occupants told him that they had been to a family reunion, while another told him they were returning from a funeral. Moreover, Chanel Lewis was driving with a suspended license and attempted to retrieve a passport for another occupant who failed to produce identification.

Given the above information, the MSP had probable cause to search the SUV under the totality of the circumstances, even in the absence of a canine sniff test.

### C. Probable Cause to Search Continued to the Westland Police Station

Bullock also says that, even if the MSP had probable cause to search the SUV during the initial stop, Westland Police no longer had probable cause to search once they impounded the SUV; moreover, Bullock asserts that the Westland Police needed an independent finding of probable cause to search the duffle bag that was inside the SUV. Bullock is wrong on both points.

First, probable cause to conduct a warrantless search of an automobile at the scene of a stop generally continues to the police station. *See Texas v. White*, 423 U.S. 67, 68 (1975); *see also California v. Acevedo*, 500 U.S. 565, 570 (1991) ("if the police have probable cause to justify a warrantless seizure of an automobile on a public roadway, they may conduct either an immediate or a delayed search of the vehicle.").

Moreover, the United States Supreme Court held that a warrantless search of an automobile can "include a search of a container or package found inside the car when [the overarching] search is supported by probable cause." *Acevedo*, 500 U.S. at 570 (citing *United States v. Ross*, 456 U.S. 798 (1991)). "If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *Ross*, 456 U.S. at 825.

Alternatively, Westland Police were entitled to search the impounded SUV under the inventory search exception to the Fourth Amendment's warrant requirement. *See United States v. Smith*, 510 F.3d 641, 650 (6th Cir. 2007) ("A valid inventory search conducted without a warrant does not violate the Fourth Amendment.") (citing *South Dakota v. Opperman*, 428 U.S. 364, 369-71 (1976)). Inventory searches "'serve to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger.'" *Id.* at 650-51 (quoting *Lumpkin*, 159 F.3d at 987). Importantly, to be deemed valid, an inventory search must be conducted "according to standard police procedures." *Id.* at 651. While an inventory search may not be undertaken for "purposes of investigation," the fact that an officer suspects that an automobile may contain evidence of a crime does not render an inventory search invalid. *Id.*

Warrantless inventory searches are only allowed where the police have lawfully taken custody of an automobile. *Id.* "When police have probable cause to believe that an automobile is forfeitable contraband, it may be seized from a public place without a warrant." *Id.* (citing *Florida v. White*, 526 U.S. 559, 561 (1999)). Where the police have

probable cause to believe that an automobile contains drugs, the automobile is subject to forfeiture. *Id.*

Here, as discussed above, the Westland Police indeed had probable cause to believe that the SUV contained drugs. The Westland Police were legally entitled to impound and conduct an inventory search of it. Moreover, Bullock has not argued that the Westland Police failed to conduct the inventory search "according to proper police procedures." Thus, the Westland Police's search of the SUV and its contents also falls squarely within the inventory exception to the warrant requirement.

## IV. CONCLUSION

Bullock had no reasonable expectation of privacy; the Court could deny his motion on that basis alone. Moreover, under the totality of the circumstances, the MSP had probable cause to both stop and search the SUV, and probable cause to search continued to the Westland Police station. The Westland Police were also legally entitled to conduct an inventory search of the SUV and its contents.

Bullock's motion to suppress is **DENIED**.

**IT IS ORDERED**.

s/ Victoria A. Roberts  
Victoria A. Roberts  
United States District Judge

Dated: February 22, 2019

S:\Roberts\Roberts\Sean\USA v. Jarreau Muntu Bullock (18-20364)\Proposed Order Denying Defendant's Motion to Suppress (18-20364) USA v. Jarreau Muntu Bullock.docx